

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

September 5, 1975

The Honorable John M. Lawrence, III
President, State Bar of Texas
P. O. Box 12487, Capitol Station
Austin, Texas 78711

The Honorable Wilson Speir, Director
Texas Department of Public Safety
P. O. Box 4087
Austin, Texas 78773

Opinion No. H- 683

Re: Whether Department of
Public Safety may provide
criminal history informa-
tion to State Bar and
Department of Public
Welfare for licensing
purposes.

Dear Mr. Lawrence and Colonel Speir:

Each of you has requested our opinion as to whether the Department of
Public Safety has authority to provide criminal history record information
to certain state agencies for licensing purposes. The State Bar of Texas
seeks criminal history record information concerning applicants for admis-
sion to the Bar; the Department of Public Welfare seeks only information
concerning felony and selected misdemeanor convictions of child care
administrator applicants and licensees.

The question here is not whether this information may be relied upon
as the basis for a licensing decision. Procedural due process requires
notice and hearing and confrontation of one's accusers. See Willner v.
Committee on Character and Fitness of New York, 373 U.S. 96, 105 (1963);
Greene v. McElroy, 360 U.S. 474 (1959). The only question is whether
the Department of Public Safety may provide such information to the State
Bar and the Department of Public Welfare to assist them in their investi-
gative responsibilities.

The Department of Public Welfare has a duty to license and regulate
administrators of child-caring institutions. Eligibility for a license requires
among other qualifications evidence of "good moral character, ethical commit-
ment, and sound physical and emotional health and maturity." V. T. C. S.
art. 695a-1, § 3. Section 7 of this licensing act provides:

The department may revoke a child care
administrator's license if it finds that the licensee:

(1)  has been convicted of a felony;
(2)  has been convicted of a misdemeanor
     involving fraud or deceit. . . .

Obviously, grounds for revocation of a license constitute grounds
for denial of an initial license.  We believe that this express authority
to take action on the basis of certain convictions necessarily includes
authority to investigate and obtain information concerning such convic-
tions.  It is a cardinal rule of statutory construction that the statutory grant
of an express power carries with it by necessary implication every other
power necessary and proper to the execution of the power expressly
granted.  Anderson v. Brandon, 47 S.W. 2d 261, 262 (Tex. Sup. 1932);
Imperial Irr. Co. v. Jayne, 138 S.W. 575 (Tex. Sup. 1911); Terrell v.
Sparks, 135 S.W. 519 (Tex. Sup. 1911); Brown v. Clark, 116 S.W. 360
(Tex. Sup. 1909).

Thus, it is our opinion that the Department of Public Welfare has
authority to obtain information as to whether applicants for a child care
administrator license, or license  holders have been convicted of a
felony or certain misdemeanors.

The Supreme Court licenses persons to practice law in Texas.  V. T. C. S.
art. 306.  The Board of Law Examiners is responsible for determining the
eligibility of candidates for admission to the Bar and recommending qualified
persons to the Supreme Court.  V. T. C. S. art. 305.  The Supreme Court
has by rule imposed a duty on the Board, the State Bar and District Com-
mittees on Admissions to investigate the qualifications of applicants for
admission to the Bar.  Rules Governing Admission to the Bar, Rules III
E, H, J, K, L, M; VIII; IX; XII (c),(g) (1974).

Good moral character is an essential qualification for admission to the
Bar.  V. T. C. S. arts. 305, 306, 307A, 307B, 308.  Rules Governing
Admission to the Bar, Rules II, III, VIII, XII.

Criminal conduct of an applicant for admission to the Bar is relevant to an investigation of the person's qualifications. Article 311, V. T. C. S., absolutely bars from admission any person who has been convicted of a felony. Upon conviction for a "felony involving moral turpitude or of any misdemeanor involving the theft, embezzlement, or fraudulent appropriation of money or other property," an attorney shall be suspended during pendency of any appeal, and shall be disbarred upon final conviction. V. T. C. S. art. 320a-1, §6. Obviously, grounds for disbarment are grounds for denial of initial admission. See Hallinan v. Committee of Bar Examiners of the State Bar, 421 P. 2d 76, 81 (Cal. 1966).

The State Bar's legitimate interest in criminal history information is not limited to convictions. "Conduct not descending to the level of guilt of the violation of a criminal statute may well present an insuperable obstacle to admission to the Bar if such conduct evinces a lack of that 'character and general fitness requisite for an attorney and counsellor-at-law.'" Application of Cassidy, 51 N. Y. S. 2d 202, 206 (N. Y. App. Div. 1944), aff'd, 73 N. E. 2d 41 (N. Y. 1947). See 7 C. J. S. Attorney & Client §7, p. 713.

It is within the discretion of the Supreme Court to deny admission to the Bar on the grounds that an applicant made materially false statements in his application for admission. See Rules Governing State Bar of Texas, art. 12 §§ DR 1-101, DR 1-102. Certainly the State Bar's investigatory authority includes obtaining information which will verify statements made by an applicant concerning charges of criminal conduct made against him and their disposition.

An administrative agency with investigative duties may take steps to inform itself on matters within its jurisdiction, such as whether there is probable violation of the law, or just to assure itself there is none. United States v. Morton Salt Co., 338 U. S. 632, 642-643 (1950). We believe the State Bar may obtain information such as that contained in criminal history records held by another state agency in the course of its investigation. Such information may suggest areas of further investigation. See Application of Levine, 397 P. 2d 205, 208 (Ariz. 1964).

The Department of Public Safety has a duty to collect and file for record information concerning convicted felons, well-known and habitual criminals, the number and nature of offenses known to have been committed in the State, of the legal steps taken in connection therewith, "and such other information as may be useful in the study of crime and the administration of justice." V. T. C. S. art. 4413(14).

We believe that the general public policy of this State is that state agencies should cooperate in the interest of efficiency and economy in the administration of their statutory duties. See V. T. C. S. arts. 4413(23), 4413(32); 695c, §4(5).

We need not reach the question of whether some of the information requested is excepted from general public disclosure under the Open Records Act, article 6252-17a, V. T. C. S.   In Attorney General Opinion H-242 (1974) we said:

> . . . Our office has previously recognized the need to maintain an unrestricted flow of information between state agencies. See Attorney General Opinion M-713 (1970). The Open Records Act does not undercut that policy. Information which is not required to be disclosed to the public under the Act can still be transferred between state agencies without violating its confidentiality or destroying its confidential character.

In addition we note that the Supreme Court Rules Governing Admission to the Bar expressly make information received in investigation of moral character and fitness confidential. Rule II D.

We are aware of the growing concern about the misuse of incomplete, inaccurate, or irrelevant criminal history record information. The potential for harm to the individual concerned increases as modern technology makes such information more accessible through nationwide criminal history record information systems. See generally, Tarlton v. Saxbe, 507 F. 2d 1116 (D. C. Cir. 1974); Menard v. Saxbe, 498 F. 2d 1017 (D. C. Cir. 1974); Menard v. Mitchell, 430 F. 2d 486 (D. C. Cir. 1970); Gregory v. Litton Systems, Inc., 316 F. Supp. 401 (C. D. Cal. 1970), modified, 472 F. 2d 631 (9th Cir. 1972); Davidson v. Dill, 503 P. 2d 157 (Colo. 1972); Henry v. Looney, 317 N. Y. S. 2d 848 (Sup. Ct. 1971); Monroe v. Tielsch, 525 P. 2d 250 (Wash. 1974); Eddy v. Moore, 487 P. 2d 211 (Wash. App. 1971); Comment, Branded: Arrest Records of the Unconvicted, 44 Miss. L. J. 928 (1973); Comment, Retention and Dissemination of Arrest Records: Judicial Response, 38 U. Chi. L. Rev. 850 (1971); Hess & LePoole, Abuse of the Record of Arrest Not Leading to Conviction, 13 Crime & Delinquency 494 (1967).

However, the Department of Public Welfare seeks only information concerning convictions. At least as to convictions in Texas, this information is public when held by the court clerk or other person responsible for filing it. See Code Crim. Proc. arts. 1.24, 2.21, 42.01, 42.02, 45.13, 45.49; V. T. C. S. arts. 1200, 1899, 1945, 2383, 3930. It is not necessary here to decide whether the public nature of this information is transformed by virtue of the compilation of it in a centralized and vastly more accessible form. The Department of Public Welfare is authorized to make decisions on the basis of convictions, and we believe it is clear that it can obtain information concerning convictions from another state agency which compiles it.

The request of the State Bar is broader, and asks for all criminal history record information which the Department of Public Safety holds or to which it has access. This information may include notations of convictions, indictments, informations, or other formal charges of criminal conduct, dispositions arising from such charges such as acquittal by reason of insanity, incompetency to stand trial, pardons, probation before convictions, no bill, nolle prosequi, charge dismissed, and a variety of other possible conclusions to criminal proceedings. It may also include information as to arrest without any indication of further action or disposition.

The Honorable John M. Lawrence, III    (H-683)
The Honorable Wilson Speir
Page 6


The United States Supreme Court, in <u>Schware v. Board of Bar Examiners,</u> 353 U.S. 232, 241 (1957) has said:

> The mere fact that a man has been arrested has
> very little, if any, probative value in showing that
> he has engaged in any misconduct.  An arrest shows
> nothing more than that someone probably suspected
> the person apprehended of an offense.  When formal
> charges are not filed against the arrested person and
> he is released without trial, whatever probative force
> the arrest may have had is normally dissipated.

This language is pertinent to the Bar's evaluation of information, but we do not believe it can be read so as to preclude inquiry and investigation into potentially relevant areas, reflected in official records of alleged or proven misconduct.

While the State Bar and Department of Public Welfare have authority to obtain this information they seek and no state law restricts the Department of Public Safety from providing it, applicable federal statutes and regulations do limit dissemination of criminal history information in some instances.

As a participant in the Federal Bureau of Investigation's National Crime Information Center and as a recipient of Law Enforcement Assistance Administration funds, the Department of Public Safety has certain contractual obligations and is subject to recent regulations issued by the Attorney General of the United States pursuant to various federal statutes concerning the dissemination of criminal history record information.  28 C.F.R. § 20.1 et seq., 40 Fed. Reg. 22114 (1975) (effective June 19, 1975).

Under these regulations, the Department of Public Safety is under a duty to limit dissemination of criminal history record information to:

> (1)  Criminal justice agencies, for purposes of
> the administration of criminal justice and criminal
> justice agency employment;

> (2)  Such other individuals and agencies which
> require criminal history record information to
> implement a statute or executive order that
> expressly refers to criminal conduct and contains
> requirements and/or exclusions expressly based
> upon such conduct;
>
> . . . .
>
> (6)  Individuals and agencies where authorized by
> court order or court rule.
> 28 C.F.R. § 20.21(b).

The regulations also provide in section 20.33 as follows:

> (a)  Criminal history record information contained
> in any Department of Justice criminal history
> record information system will be made available:
>
> . . . .
>
> (3)  Pursuant to Public Law 92-544 (86 Stat. 115)
> for use in connection with licensing or local/state
> employment or for other uses only if such dis-
> semination is authorized by Federal or state statutes
> and approved by the Attorney General of the United
> States. . . .

The Director of the Federal Bureau of Investigation has been given authority to approve exchanges of identification records with State and local governments for purposes of employment and licensing. 28 C.F.R. § 0.85(j) (1974).

It is our view that the Department of Public Welfare's child care administrator licensing statute brings it precisely within the terms of 28 C.F.R. § 2-.21(b)(2), in that the statute "expressly refers to criminal conduct and contains express requirements and/or exclusions expressly based upon such conduct." V.T.C.S. art. 695a-1, § 7.

It is apparent that the State Bar of Texas is within several categories of those agencies to whom criminal history record information may be dis-seminated.

In our opinion, the Department of Public Safety has authority to cooperate with the Department of Public Welfare and the State Bar of Texas by providing those agencies with the information they have requested and which the Department of Public Safety holds.

To the extent that the federal regulations discussed are applicable to all or part of the information you hold or to which you have access through contractual arrangements, it is our view that the Department of Public Welfare and the State Bar are within the categories of agencies described in the federal regulations as those to whom dissemination is permissible. In order to avoid questions as to applicability or possible breach of contractual provisions, the Department of Public Safety should request the Attorney General of the United States, through the Director of the Federal Bureau of Investigation, to approve the dissemination of that criminal history record information to which the regulations are applicable to these agencies pursuant to 28 C. F. R. §20.33; see 28 C. F. R. §0.85(j).

Upon receipt of this approval, which we believe should be forthcoming, the Department of Public Safety may provide the requested information to the State Bar and the Department of Public Welfare under such terms and conditions as are reasonable and necessary to accomplish such inter-agency cooperation. See V. T. C. S. art. 4413(32).

Colonel Speir also asks in reference to the Department of Public Welfare's request, what misdemeanors involve fraud and deceit within the meaning of section 7 of article 695a-1, V. T. C. S. In our opinion, this refers to offenses which include fraud or deceit as an element of the offense.

Without attempting to be exhaustive, and by way of example only, depending upon the circumstances of the particular offense, misdemeanor offenses such as those defined in Penal Code chapters 31 (theft), 32 (fraud), 37 (perjury and other falsification) may involve fraud and deceit.

SUMMARY

The Department of Public Safety may provide
criminal history information to the State Bar of Texas
and the Department of Public Welfare to assist them
in their licensing responsibilities.   The approval of
the Attorney General of the United States should be
sought to disseminate criminal history record
information from the National Crime Information
Center System to these agencies.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee